## BARSOCK v. UNITED STATES.

### No. 12013.

United States Court of Appeals
Ninth Circuit.

Aug. 12, 1949.

---

Caryl Warner and Joseph Stone, Los Angeles, Cal., for appellant.

James M. Carter, U. S. Attorney, Ernest A. Tolin, Chief Assistant U. S. Attorney, Norman W. Neukom and Herschel E. Champlin, Asst. U. S. Attorneys, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of conviction for first degree murder of one Howard Everett Jepson, pursuant to which a sentence of life imprisonment was imposed · upon appellant. The indictment charged the murder to have occurred . on the United States Naval Station Terminal Island in the Southern District of California, and hence the cause is within federal jurisdiction. 18 U.S.C.A. §§ 451, 452 [now §§ 7, 1111].

A. The first contention of appellant is that the killing occurred in the course of resisting an illegal arrest and hence that the offense was not murder in the first degree, and that the trial court erred in instructing the jury that the legality of the arrest of appellant by naval authorities was immaterial.

The facts proved are that appellant is a civilian, discharged from the Navy. On April 2, 1948, he went to the Terminal Island Naval Base for the purpose of validating his previously issued naval ticket to Louisiana. At that time he was illegally wearing a Navy uniform. The transportation office on the base was closed, and appellant decided to stay overnight in the barracks because it was raining.

Appellant was apprehended by the Master at Arms for a claimed wrongful taking of a blanket not belonging to him. He was brought before the Officer of the Day who, after reprimanding appellant, directed that he be taken back to the barracks for the night. When asked for his identification card by the Master at Arms, appellant produced an indentification card and a liberty card, both bearing the name of a sailor named Clover. Clover could not and did not give anyone permission to use the two cards, which had been missing from his billfold since March 30, 1948.

Upon his return to the barracks, appellant was questioned by the Master at Arms about the wearing of clothing belonging to three different sailors. This was a violation of Navy Regulations, and so the Master at Arms went to call the Officer of the Day again. During the former's absence, appellant left the barracks and climbed over a barbed wire fence and left the base. He was observed climbing over the fence and this was reported to the Chief Petty Officer on roving patrol, who apprehended appellant on the street outside the base. After giving a false story of his identity and duty station, appellant was told he was under arrest and charged with the commission of three naval offenses.

Appellant was then taken to the dispensary for a medical examination prior to his being confined in the brig. Jepson, a chief pharmacist mate, participated in the examination. After the medical clearance papers were signed, a guard, one Edwin Garven Ballard, took appellant out of the dispensary en route to the brig. · Appellant then overpowered Ballard and succeeded in getting a .45 caliber automatic pistol away from him. Appellant backed away from Ballard and cocked the pistol, keeping him covered. Ballard made no attempt to come toward appellant. Just then Jepson appeared from the direction of the driveway about sixty feet away. Ballard shouted, "Hold it, Chief. He has got my gun." Appellant then turned and fired at Jepson as he stood in the driveway. Realizing that he had hit the man, appellant ran out of the driveway, slipped out of the main gate and left the base. He was apprehended by officers of the Long Beach Police Department about ten o'clock that morning, hiding on a deserted ship in the harbor.

To appellant's first contention that this homicide occurred during a resistance to an unlawful arrest and hence the crime should be mitigated to manslaughter, the

court below instructed the jury that "It is immaterial whether or not the arrest, detention and custody of defendant by Navy personnel, other than the deceased Jepson, or the other acts and conduct of such other Navy personnel, before the killing, were lawful or unlawful."

■ We think that the instruction given was correct. The evidence as outlined above shows that the deceased took no part in the arrest or detention of appellant. Jepson's activities in examining appellant and signing his medical clearance papers had been completed and appellant was on his way to the brig when the shooting occurred. The deceased was not attempting to exercise any control over appellant, much less did he threaten appellant with any physical harm.

The cases relied on by appellant concern the killing of the arresting officer by the person sought to be arrested, not the deliberate killing of an innocent bystander. We have found no case holding that such a deliberate killing by one subject to an illegal arrest of a person not taking part in the arrest is either excusable or will be mitigated to manslaughter, and we do not now adopt such a rule. Hence it was not material whether or not the arrest was lawful, and the instruction given was correct.

B. Appellant's second contention is that he had been in prior jeopardy by the dismissal of a second count of indictment after evidence had been taken, which second count is claimed to be identical with the first count upon which the jury found him guilty.

The pertinent words of the first count are: "with premeditation and *with malice aforethought* shot and murdered Howard Everett Jepson." Those of the second count were: "in the perpetration of the robbery of Edwin Garven Ballard, and *with malice aforethought* did shoot and murder Howard Everett Jepson." (Emphasis supplied.)

■ Appellant contends that the same crime of murder is charged in both counts. Assuming but not deciding that the two counts are for the same crime, we hold there is no merit in appellant's contention.

This court has held that a dismissal of one count, where the indictment charges the same offense in two counts, even after all the evidence is in, does not operate as a bar to a subsequent indictment for the same offense. Craig v. United States, 9 Cir., 81 F.2d 816, 819, certiorari denied, Weinblatt v. United States, 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408, rehearing denied Craig v. United States, 299 U.S. 620, 57 S.Ct. 6, 81 L.Ed. 457; O'Malley v. United States, 8 Cir., 128 F.2d 676, 684; cf. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A. L.R. 161. In the Craig case an earlier trial had resulted in the discharge of the jury for failure to agree after the defendant had successfully moved for a dismissal of one of two counts charging the same offense. On a second trial for the same offense, the defendant's plea of former jeopardy was overruled by the trial court, and this court affirmed. Assuming that the same offense is charged in both counts of the indictment in the instant case, if a second trial would not be barred, a fortiori, a submission of the first count to the jury in the same trial would not violate appellant's right not to be placed twice in jeopardy for the same offense.

The judgment is affirmed.